**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS P. LALLY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 5011 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| CITY OF CHICAGO, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on several post-trial motions: Defendants' motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), and in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59 [126]; Plaintiff's motion for attorneys' fees [138]; Plaintiff's bill of costs [121]; and Defendants' bill of costs [134]. For the reasons set forth below, the Court denies Defendants' post-trial motion [126], grants in part and denies in part Plaintiff's motion for attorneys' fees [138]; denies Plaintiff's bill of costs [121]; and grants in part and denies in part Defendants' bill of costs [134].

I.      **Background**

In this lawsuit, Plaintiff asserted federal claims of false arrest, false imprisonment, and violation of freedom of speech and state law claims of false arrest, false imprisonment, and intentional infliction of emotional distress. Plaintiff sought both compensatory and punitive damages. Prior to trial, on March 27, 2012, the City and Defendant Officers served Plaintiff with a Rule 68 offer of judgment, which offered Plaintiff $40,001.00 plus reasonable attorneys' fees and costs accrued to date. Plaintiff did not accept the offer and the matter proceeded to trial on September 4, 2012. The jury returned a verdict in favor of Plaintiff and against Defendants

Kaupert and Norberg on his federal and state claims for false arrest and false imprisonment and for Defendants on all of the other claims. The jury awarded Plaintiff $1.00 in compensatory damages and $25,000.00 in punitive damages ($15,000.00 as to Defendant Kaupert and $10,000.00 as to Defendant Norberg).

## II.     Motion for Judgment as a Matter of Law or New Trial

On a motion for judgment as a matter of law under Fed. R. Civ. P. 50, a court must determine whether the evidence presented at trial, when viewed in the light most favorable to the non-moving party, is sufficient to support the verdict. *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000); see also *Hall v. Gary Community Sch. Corp.*, 298 F.3d 672, 675 (7th Cir. 2002). Although a mere scintilla of evidence is not sufficient to sustain a verdict, the Court is not to substitute its view of the contested evidence in place of the jury's determination. *Filipovich v. K & R Express Sys., Inc.*, 391 F.3d 859, 863 (7th Cir. 2004). A jury verdict is not to be set aside if, viewing the evidence in the light most favorable to the prevailing party, there exists within the record any reasonable basis to support the verdict, leaving issues of credibility and weight of evidence to the jury. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (citation omitted). In other words, the test is whether "no rational juror could have found for the prevailing party." *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002); see also *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 630 (7th Cir. 1996) (the court is limited to assessing whether no rational jury could have found for the plaintiff). A trial court may grant a motion for a new trial where "the clear weight of the evidence is against the jury verdict, the damages are excessive or for some other reason the trial was not fair to the moving party." *Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1293 (7th Cir. 1993) (citing *Walden v. Ill. Central Gulf R.R.*, 975 F.2d 361, 365 (7th Cir. 1992)). However, the Seventh

Circuit has cautioned that "only when a verdict is contrary to the manifest weight of the evidence should a motion for a new trial challenging the jury's assessment of the facts carry the day." *Emmel*, 95 F.3d at 629.

## A.    Sufficiency of the Evidence

Defendants contend that Defendant Officers Kaupert and Norberg had probable cause to arrest Plaintiff Lally and therefore are entitled to judgment as a matter of law on both the federal and state law claims for false arrest and false imprisonment.  "[I]f the question of probable cause arises in a damages suit, it is a proper issue for the jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993).  "Accordingly, a conclusion that probable cause existed as a matter of law is appropriate only when no reasonable jury could find that the officers did not have probable cause to arrest * * *." *Id.* at 434.  The question of probable cause can only be taken from the jury "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir. 1994).  In addressing the evidence, the Court views the evidence in a light most favorable to the verdict reached by the jury. *Davis v. Wisconsin Department of Corrections*, 445 F.3d 971, 972 (7th Cir. 2006).  If there is any view of the evidence which could support the jury's finding that no probable cause existed, Defendants' motion must be denied.  See *Costello v. Oppenheimer & Company, Inc.*, 711 F.2d 1361, 1367 (7th Cir. 1983).

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (citing *Potts v. City of Lafayette*, 121 F.3d

1106, 1113 (7th Cir. 1997)). "This is so even where the defendant officers allegedly acted upon a malicious motive." *Id.* (citing *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993)). Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed" an offense. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). The Court evaluates probable cause "not on the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." *Id.*; see also *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000); *United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990) (courts determine the existence of probable cause by applying an objective standard; it is the mindset of the "reasonable officer" and not of the actual arresting officer that matters). The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime. If the test is satisfied "the arrest is lawful even if the belief would have been mistaken." *Kelly*, 149 F.3d at 646. Thus probable cause has been described as a zone within which reasonable mistakes will be excused. *Id.*

Defendants argue that the evidence presented at trial established that Defendant Kaupert lawfully directed the arrest of the Plaintiff for obstructing a peace officer and for being wrongfully in a roadway. Tr. Trans. at p. 633. In support of their argument, Defendants cite to Defendant Officers' testimony. For instance, Sergeant Kaupert testified that Plaintiff stepped into the roadway and approached his vehicle. Kaupert further testified that the Plaintiff appeared aggressive to him. Tr. Trans. at p. 624. Kaupert testified that, after Plaintiff stepped into the roadway the first time, he directed him to go back to the sidewalk and Plaintiff complied. Tr.

Trans. at pp. 629-620. Other officers testified that Plaintiff was in the roadway, yelling at the officers.

Conversely, Chief Lally testified that after Kaupert arrived at the scene and spoke with Defendant Officers, Kaupert lowered his window on the passenger side of the car and motioned to Plaintiff to come forward to talk. While Defendants claimed at trial, and claim again in their post-trial motion, that Chief Lally was aggressive, yelling, and acting in a manner that prevented Kaupert from communicating with his officers, Chief Lally, whose testimony must be credited for purposes of this motion, denied these assertions and testified that only near the end of the conversation, when Kaupert raised his voice, did Plaintiff raise his voice in response. Chief Lally's testimony is largely confirmed by Officer Ramos, who testified that he could not hear the conversation between Plaintiff and Kaupert—a conversation that Kaupert and Norberg characterize as a shouting match—although Ramos stood 10 feet away.

Without objection from the parties, the Court instructed the jury on obstructing a peace officer as follows:

> A person commits the offense of obstructing a peace officer if he knowingly obstructs the performance of any authorized act within the official capacity of one known to him to be a peace officer. There can be no crime of resisting a peace officer unless the person engages in a physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties. The crime of obstructing a peace officer requires more than a mere argument with a peace officer.

Specifically, a person commits obstruction or resistance of a peace officer when, (1) knowing that one is a peace officer, (2) he or she knowingly resists or obstructs (3) the officer's performance of an authorized act. 720 ILCS 5/31–1(a); see *People v. Agnew–Downs*, 936 N.E.2d 166, 174–76 (2010). The Illinois Supreme Court has held that 720 ILCS 5/31–1(a) does "not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe[s] only some physical act which imposes an obstacle which may impede, hinder,

interrupt, prevent[,] or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest[,] or physically aiding a third party to avoid arrest." *People v. Raby,* 240 N.E.2d 595, 599 (1968) (internal quotation marks and citation omitted); *Abbott v. Sangamon Co., Ill.,* 705 F.3d 706, 719 (7th Cir. 2013); *Jones v. Clark,* 630 F.3d 677, 684–85 (7th Cir. 2011) (no arguable probable cause to arrest meter reader because there was no physical act); *Shipman v. Hamilton,* 520 F.3d 775, 779 (7th Cir. 2008) (no probable cause where nurse never physically resisted officer); *Williams v. Jaglowski,* 269 F.3d 778, 781–83 (7th Cir. 2001) (no arguable probable cause where plaintiff merely refused to give officers her identifying information).

The inquiry for the jury was whether at the time of the arrest a reasonable police officer could have believed that Plaintiff had undertaken (or was about to undertake) a physical act which imposed an obstacle that impeded, hindered, interrupted, prevented, or delayed Defendant Officers' performance of authorized acts. Given the disparity between the officers testimony and Lally's testimony, the jury could have concluded that Defendants did not present sufficient evidence at trial of a "physical act" committed by Plaintiff. Additionally, the jury reasonably could have believed that Plaintiff was not intending to interfere with the officers, but rather that Plaintiff was performing his own duties as Battalion Chief at the time that he conversed with the officers. In fact, there was ample evidence for the jury to conclude that Plaintiff had a duty to request a report or an "RD number," was in fact requesting one, and, rather than interfering with the officers' duties, was being hindered by the officers in performing his own duties.

Defendants also argue that there was probable cause to arrest Plaintiff for violating the Chicago Municipal Code by "being wrongfully in a roadway." During trial, Defendants tendered and the Court gave a jury instruction, which read as follows: "A person commits the offense of

pedestrians walking on a highway if he knowingly walks along or upon a roadway where an adjacent sidewalk is provided and its use is practicable." Defendants maintain that Plaintiff violated this ordinance and therefore Defendants had probable cause to arrest him. Plaintiff contends that the evidence presented at trial supports a reasonable inference that Plaintiff, in concert with his duties as Battalion Chief at the scene of a fire, was appropriately requesting an "RD" number.

A jury could reasonably conclude that this ordinance was not violated by Plaintiff. First, a reasonable inference from the evidence is that Plaintiff never entered the roadway, but rather stepped into a parking space in order to communicate with Sgt. Kaupert, who never left his vehicle. No evidence was presented at trial that there was "an adjacent sidewalk" that would have provided a path for Plaintiff to walk from the parkway to the passenger side window of Kaupert's vehicle. The jury reasonably could have concluded that the ordinance prohibits a person from walking "along" a roadway rather than on the adjacent sidewalk (or from traveling on foot on a highway or roadway when they could just as easily travel by foot on an adjacent sidewalk), not that the ordinance is violated by stepping into a parking spot or street to converse with another person.

Additionally, Officer Ramos suggested that under the circumstances, the RD number should have been given to Plaintiff. The evidence also showed that once the disagreement rose to the level of the watch commander, the report number was provided. In fact, Officer Ramos testified that he had been directed by Sgt. Kaupert to provide the report number, although he never informed Plaintiff of this fact. Once again, it was reasonable for the jury to conclude that Plaintiff had a need for the RD number, that he was engaging in his official duties when he sought that number, and that there was no probable cause to arrest Plaintiff for an ordinance

violation. Because a view of the evidence exists which could support the jury's finding that no probable cause existed, Defendants' motion must be denied. See *Costello,* 711 F.2d at 1367.

## B.    Remittur of Punitive Damage Award

Defendants also move pursuant to Federal Rule of Civil Procedure 59 for a remittitur on the punitive damages awarded. Defendants claim that the punitive damages awarded by the jury were excessive in light of the evidence presented at trial.

"A jury has wide discretion in determining damages, so long as it has a reasonable basis * * * * Underlying the deference to a jury's assessment of damages is the acknowledgment that the actual measure of damages is an exercise in factfinding." *Mason v. City of Chicago*, 641 F. Supp. 2d 726, 729 (N.D. Ill. 2009) (internal quotes and citations omitted). "A jury may award punitive damages in a § 1983 case if it finds that the defendants' conduct was motivated by evil intent or callous indifference to the plaintiff's federally protected rights." *Marshall v. Teske*, 284 F.3d 765, 772 (7th Cir. 2002). In assessing whether a punitive damage award is constitutionally appropriate, the Supreme Court has directed courts to focus their evaluation on three guideposts: (1) the reprehensibility of the defendant's conduct; (2) the relationship between the amount of the punitive damages awarded and the harm or potential harm suffered by the Plaintiff; and (3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases. See *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996); see also *G.G. v. Grindle,* 665 F.3d 795, 798 (7th Cir. 2011) (in determining whether an award is reasonable, courts consider whether "(1) the award is monstrously excessive; (2) there is no rational connection between the award and the evidence * * *; and (3) whether the award is roughly comparable to awards made in similar cases").

Defendants argue that their conduct was not reprehensible, citing Defendant Officers' testimony to the effect that they honestly believed that there was probable cause to arrest Plaintiff. However, there was evidence presented at trial that Defendant Officers were bothered by Plaintiff's presence at the scene and, rather than working out a conflict with another public official in a professional manner, Officers Kaupert and Norberg instead escalated the conflict and unlawfully misused their arrest powers out of frustration to silence Plaintiff. Additionally, the jury reasonably could have found that Defendant Officers gave false testimony by exaggerating both Plaintiff's conduct and the verbal disagreement between Plaintiff and Sgt. Kaupert, in an effort to avoid liability. See, *e.g.*, *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 858 (7th Cir. 2001) ("A plaintiff may establish that the defendant acted with reckless disregard for his federally protected rights by showing that the defendant's employees lied, either to the plaintiff or the jury, in order to cover up their discriminatory actions."); *Lampley Learning Curve Toys v. Onyx Acceptance Corp.*, 340 F.3d 478, 483 (7th Cir. 2003) ("Because a jury could have found that Onyx engaged in a cover-up rather than a good faith investigation of Lampley's retaliatory discharge claim, we find that punitive the damages issue was properly before the jury."). Furthermore, evidence was presented that Kaupert approved a false police report which omitted a description of Plaintiff's arrest. Lastly, having awarded only nominal compensatory damages, the jury indicated that it did not believe that Plaintiff suffered economic harm as a result of his ordeal. Nevertheless, the award as a whole suggests that the jury believed that the police officers' conduct—arresting a fire chief who was arguably trying to do his job, placing him in police lock-up for an hour, and then suggesting that everything should be brushed under the rug—was reprehensible and deserving of punishment.

In *BMW of North America, Inc. v. Gore*, the Supreme Court addressed the circumstance in which a low compensatory damages award may affect the appropriate level of punitive damages: "Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which injury is hard to detect or the monetary value of non-economic harm might have been difficult to determine." 517 U.S. at 582. Additionally, courts have determined that "punitive damages may be awarded in a § 1983 case, even if the compensatory damages are only nominal." *King v. Macri*, 993 F.2d 294, 297-98 (2nd Cir. 1993) (and cases cited therein); *Edwards v. Jewish Hospital of St. Louis*, 855 F.2d 1345, 1352 (8th Cir. 1988) ("To apply the proportionality rule to the nominal damages award would invalidate most punitive damage awards because only very low punitive damage awards could be said to bear reasonable relationship to the amount of a nominal damages award."); *Abner v. Kansas City Southern Railroad Company*, 513 F.3d 154, 160 (5th Cir. 2008) ("We agree with the conclusion of several of our sister circuits that a punitive damages award under Title VII and §1981 need not be accompanied by compensatory damages."). Based on the evidence at trial, the jury appropriately took into account Plaintiff's inability to present sufficient evidence of tangible damages, yet rationally that constitutional violations of this sort are best deterred by a significant, but not excessive, award of punitive damages against the offending officers.

The Court has considered the comparable cases cited by the parties. Not surprisingly, those cases are all over the map. See, *e.g.*, *Taliferro v. Augle*, 757 F.2d 157 (7th Cir. 1985) (jury awarded $42,000 in compensatory damages and $25,000 in punitive damages and court of appeals ordered a remittitur of the compensatory damages to $22,000, but affirmed the award of

$25,000 in punitive damages); *Hagge v. Bauer*, 827 F.2d 101, 110 (7th Cir. 1987) (punitive damage award of $25,000 against a single police officer was not excessive where plaintiff suffered a broken leg during her arrest); *Terrell v. Village of University Park*, 1994 WL 30960 (N.D. Ill. Feb. 1, 1994) (the jury awarded $5,000 in compensatory damages and $10,000 punitive damages in an excessive force case which resulted in no significant injury); *Waits v. City of Chicago,* 2003 WL 21310277 (N.D. Ill. June 6, 2003) (after jury returned an award of $15,000 in compensatory damages on an excessive force claim and $500,000 and $1,500,000, respectively, in punitive damages against the two involved officers, the district court ordered a *remittitur* of the punitive damages awards, reducing them to $20,000 and $25,000); *Lampley v. Onyx Acceptance Corp.,* 340 F.3d 478 (7th Cir. 2003) (upholding a punitive damages award in a Title VII case that could be interpreted as nine times the compensatory damages award); *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003) (upholding a punitive damages award in a common law tort case that was 37.2 times the compensatory damages awards).  Although these cases vary in the amounts awarded as well as in the kind of conduct being punished, all of the cases cited by the parties (and these in particular) suggest that the jury was not out of bounds with awards of punitive damages in the amounts of $10,000.00 and $15,000.00.

Finally, the Seventh Circuit has explained that to determine whether punitive damages are appropriate in a given case, a court must consider "why punitive damages are awarded in the first place." *Mathias*, 347 F.3d at 676.  Punitive damages provide a civil alternative to criminal prosecution of minor crimes, in situations where compensatory damages would be insufficient: such as, where compensatory damages are "difficult to determine in the case of acts that inflict largely dignatory harms;" where the injuries suffered are "too slight to give the victim an incentive to sue;" and where compensatory damages are sufficiently low that they would "enable

the defendant to commit the offensive act with impunity provided that he was willing to pay" in those cases where a suit was brought. *Id.* at 676-77. However, the considerations that provide a rationale for punitive damage tend to "fade" in cases of "huge economic injuries," since awarding "very substantial compensatory damages * * * greatly reduce[s] the need for * * * a huge award of punitive damages." *Id.* Here, while the compensable harm to Plaintiff was "slight and at the same time difficult to quantify" (*id.* at 677), the jury concluded that Defendants' behavior was well out of line with what citizens expect of their police officers. Viewing the evidence as Defendants do, Plaintiff was hindering their on-sight investigation of a fire by forcibly requesting an RD number. Viewing the evidence as Plaintiff and apparently the jury did, Plaintiff was a Battalion Chief on the scene of a fire, trying to do his job by securing an RD number, and Defendants thwarted him at each turn. Then, after he was arrested and "cooler heads" looked at the situation, it was determined that his arrest lacked probable cause and he was asked to forget about the whole thing in exchange for a bottle of liquor. That the jury was offended by this—and wanted to deter future similar situations by Chicago police officers—is not surprising.

Taking all of the foregoing into consideration, the punitive damages awards in this case are not symptomatic of a "runaway jury" that acted out of bias, prejudice or sympathy—factors which the jury was instructed it could not use as the basis for any punitive damages award. The jury returned defense verdicts on several claims, including on counts 5 and 6 as to Defendant Officers Kaupert and Norberg. Thus, the jury verdicts as a whole do not reflect any antagonism toward Defendants. Moreover, the Court believes that the jury gave careful consideration both to the evidence and the jury instructions. Indeed, the jury concluded, in the face of little to no evidence of economic harm and a short stay in custody, that Plaintiff was not entitled to

compensatory damages. They also found in favor of Officers Ramos and Gale, who the Court would consider, at best, to be peripheral Defendants. Finally, the jury awarded punitive damages against two officers in varying amounts (Kaupert in the amount of $15,000 and Norberg in the amount of $10,000), strongly suggesting that they closely considered each officers' conduct and awarded damages accordingly. Indeed, a reasonable view of the evidence paints Officer Kaupert as the more culpable defendant. As the sergeant on the scene—and a lawyer to boot (as is Plaintiff—he should have either been the "cooler head" or brought the dispute to higher ups in the police department, or both, for resolution. Thus, rather than suggesting "no rational connection between the evidence on damages and the verdict," this jury's verdict suggests close attention to the evidence, an unwillingness to compensate for economic harm where none could be found, and a desire to punish unprofessional and petty behavior on the part of City of Chicago police officers. The Court does not believe that the jury's decision to award modest punitive damages can be appropriately second-guessed. Because only nominal compensatory damages were awarded, a denial of punitive damages would result in no punishment or deterrence, despite the jury's clear finding of a violation of Plaintiff's constitutional rights. Therefore, the Court concludes that a remittitur of the punitive damages amount is not appropriate.

## III. Attorneys' Fees

In order to entice competent attorneys to prosecute civil rights cases, Congress enacted 42 U.S.C. § 1988, pursuant to which a "prevailing party" in a § 1983 action is entitled to "reasonable" attorneys' fees. See *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Under the Supreme Court's self-termed "generous formulation" of the phrase, a civil rights plaintiff is considered to be a "prevailing party" if he or she succeeds on "any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v.*

*Hobby*, 506 U.S. 103, 109 (1992) (citing *Hensley*, 461 U.S. at 429); see also *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989).

The Supreme Court elaborated on the definition of prevailing party in three cases in the late 1980s, and then synthesized those rulings in *Farrar v. Hobby*. See *Hewitt v. Helms,* 482 U.S. 755, 761 (1987) (observing that "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail" and requiring the plaintiff to prove "the settling of some dispute which affects the behavior of the defendant towards the plaintiff"); *Rhodes v. Stewart,* 488 U.S. 1, 3 (1988) (explained that "nothing in [*Hewitt*] suggested that the entry of [a declaratory] judgment in a party's favor automatically renders that party prevailing under § 1988" and reaffirming that a judgment—declaratory or otherwise—"will constitute relief, for purposes of § 1988, if, and only if, it affects the behavior of the defendant toward the plaintiff"); *Texas State Teachers Assn.,* 489 U.S. at 792 (emphasizing that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties"). In *Farrar*, the Supreme Court summed it up by stating that a plaintiff "prevails" when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." 506 U.S. at 111-12.

In deciding the specific amount that is reasonable in the circumstances, the Supreme Court has directed district courts to consider as a "starting point" (or "lodestar") the number of hours expended in the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. The Court has stressed that the "most critical factor" in determining the reasonableness of a fee award is "the degree of success obtained" by the prevailing party. *Id*. at 436. Courts frequently attempt to measure success by viewing three factors: (1) the difference between the

actual judgment and the recovery sought, (2) the significance of the legal issues on which the plaintiff prevailed, and (3) the public interest at stake in the litigation. See, *e.g.*, *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999).

The Supreme Court expressly has stated that when litigation of a § 1983 case leads to "excellent results" for the prevailing party, the plaintiff's attorney "should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. As the Court further explained, "[n]ormally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id*. Both the Supreme Court and the Seventh Circuit have stressed that a fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435; see also *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 (7th Cir. 1995). As the court of appeals summarized, "*Hensley* makes clear that when claims are interrelated, as is often the case in civil rights litigation, time spent pursuant to an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998).

A.      **Prevailing Party**

"[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). "[A] plaintiff who wins nominal damages is a prevailing party under §1988." *Id.* at 112. Plaintiff was awarded total damages of $25,001.00 against defendants Kaupert and Norberg, and clearly is the prevailing party. The only remaining question is what amount of attorney's fees should be awarded.

## B. Offer of Judgment

Defendants correctly point out that an offer of judgment was made and that the result at trial was an award of damages less than the Rule 68 offer. However, Defendants then claim that "[b]ecause the plaintiff was not awarded an amount greater than the $40,001.00 offered by the City and the defendants, under Rule 68, plaintiff is not entitled to an award of any fees against the defendants." In support of their assertion that Plaintiff's failure to surpass the offer of judgment results in an award of zero for attorney's fees, Defendants cite *Payne v. Milwaukee County*, 288 F.3d 1021 (7th Cir. 2002). However, Defendants misread *Payne*. The *Payne* decision clearly states the law in this regard: "Civil rights plaintiffs * * * who reject an offer more favorable than what is thereafter recovered at trial will not recover attorney's fees *for services performed after the offer is rejected*." *Payne*, 288 F.3d at 1025 (citing Marek v. Chesny, 473 U.S. 1, 10 (1985) (emphasis added). As the prevailing party, Plaintiff is entitled to reasonable attorneys' fees incurred prior to the Rule 68 offer. Plaintiff's counsel, utilizing the clear guidance provided by the Seventh Circuit in *Payne*, only seeks fees up to the date of the offer.

## C. Reasonableness of Fees Sought

Defendants claim that the $25,001.00 awarded to Plaintiff should be considered "nominal" damages because Plaintiff only received $1.00 in compensatory damages and therefore Plaintiff should not be awarded any attorneys' fees. In *Farrar v. Hobby*, 506 U.S. 103 (1992), the Supreme Court held that where the plaintiff was awarded only "nominal" damages— Farrar was only awarded $1.00—no fees should be awarded. Defendants seek to extend this principle to cover this case, even though Plaintiff received a total jury award of $25,001.00. In addition to *Farrar*, Defendants also cite *Briggs v. Marshall*, 93 F.3d 355 (7th Cir. 1996), in

support of their position. However, in *Briggs*, like *Farrar*, the plaintiff was only awarded nominal damages of $1.00. Significantly, the Seventh Circuit noted that the jury "awarded each plaintiff only $1.00 in nominal damages and no punitive damages." 93 F.3d at 358. Clearly, the $25,000 in punitive damages awarded to Plaintiff figures into the attorneys' fees calculus. Given the substantial punitive damages award, this is not a case in which the "the only reasonable fee is * * * no fee at all" (*Farrar*, 506 U.S. at 115), and thus the Court turns to the three factors that courts typically consider when assessing the prevailing party's "success" at trial.

In regard to the first factor, there was a considerable difference between the actual judgment received by Plaintiff and the recovery he sought. Plaintiff's initial demand before trial was $400,000, which he later changed to "an amount in excess of Fifty Thousand Dollars ($50,000.00), plus punitive damages." Then, during closing arguments, Plaintiff's counsel requested a "six-figure" award of damages. Plaintiff clearly received far less than his demand— in fact, he received less than 10% of his original demand and less than half of the damages requested made during closing arguments. See *Cole v. Wodziak*, 169 F.3d 486, 487 (7th Cir. 1999) ("Cases such as *Farrar*—and, in this circuit, *Fletcher v. Ft. Wayne*, 162 F.3d 975 (7th Cir.1998), and *Simpson v. Sheahan*, 104 F.3d 998 (7th Cir.1997)—show that recovering less than 10% of the demand is a good reason to curtail the fee award substantially."). He also received substantially less than the $40,001.00 offer of judgment. This factor weighs heavily in favor of curtailing counsel's requested fees. See *Frizzell v. Szabo*, 647 F.3d 698, 703 (7th Cir. 2011) (noting that "the difference between the judgment recovered and the recovery sought is the most important of the three factors").

In regard to the significance of the legal issues on which Plaintiff prevailed as well as the public purpose of this litigation, these factors too weigh in favor of curtailing the requested fees.

Plaintiff paints the litigation as a "significant issue arising between Chicago police officers and a Chicago Fire Department battalion chief, individuals from organizations that provide critical services to the public literally involving the life and death of citizens." A far cry from Plaintiff's description, what this case really involved was public officials in positions of power who had a quarrel, which resulted in the arrest of the official who did not have the power to arrest by those who did. Rather than presenting significant legal issues, this case presented both the Court and the jury with an unflattering look at how the public officials involved in this case reacted in the face of controversy: by engaging in unprofessional behavior, escalating minor disagreements, failing to peaceably resolve conflicts, and then using the court system to seek financial and emotional damages for which there was little to no evidence.

Similarly, the public purpose of the litigation was negligible. The dispute clearly started as a battle of egos, with Defendants then taking things a step too far. At the end of the day, this case can be summed up as follows: Plaintiff recovered a not-inconsequential amount (but one far less than demanded) from the jury in a case in which no one covered themselves in glory, no significant legal issues were tried, and no public purpose was served. The jury clearly found Defendant Officers' behavior to be more unprofessional that Plaintiff's, as they were entitled to do, and punished two of the Defendants to the tune of $25,000.

Plaintiff wisely considered the law prior to filing his motion for attorneys' fees and requested only the amount expended prior to the offer of judgment. That amount—$53,505.00—is based on 118.9 hours expended at a rate of $450.00/hour. Based on the comparable cases and counsel's 35 years of experience, the hourly rate of $450.00 is reasonable. However, the hours expended included significant time spent on claims that went nowhere. Plaintiff in fact dropped one claim (Count V, entitled Denial of Access to Courts) prior to trial, presented very minimal

evidence (if any) at trial in support of his First Amendment Free Speech (Count VI) and Intentional Infliction of Emotional Distress (Count VII) claims, lost all claims asserted against two of the Defendant Officers at trial, and spent a significant amount of time trying to keep in a Defendant for which Plaintiff's claims were clearly time barred. For these reasons, the Court believes a 50% reduction in the fees sought is appropriate. Accordingly, the Court will reduce Plaintiff's attorneys' fees award to $26,752.50.

Because Plaintiff was awarded only $1.00 in compensatory damages and the remainder of the award was for punitive damages, the City contends that it should not be liable for payment of attorneys' fees. Instead, the City maintains that those fees should be borne solely by Officers Kaupert and Norberg. The Court disagrees. The City, by state law, is required to indemnify the individual defendants for the compensatory damages awarded and through this same provision is responsible for attorneys' fees. 745 ILCS 10/9-102. While the City is not liable for the payment of the punitive damages, punitive damages are considered when analyzing the three factors noted in *Frizzel*. In the present case, the City of Chicago's liability for attorneys' fees comes from its responsibility for the compensatory damages awarded—damages for which it is liable. The City of Chicago, as well as Officers Kaupert and Norberg, are liable for Plaintiff's attorneys' fees.

## IV.     Bills of Costs

Following the verdict in this case, both sides filed bills of costs. Plaintiff requests $3,679.27 in costs, and Defendants request $6,333.50 in costs. Rule 54(d)(1) provides that "costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The rule "provides a presumption that the losing party will pay costs but grants the court discretion to direct otherwise." *Rivera v. City of Chicago,* 469 F.3d 631, 634 (7th Cir. 2006). However, the Seventh Circuit recognizes "only two situations in which the denial of

costs might be warranted: the first involves misconduct of the party seeking costs, and the second involves a pragmatic exercise of discretion to deny or reduce a costs order if the losing party is indigent." *Mother & Father v. Cassidy,* 338 F.3d 704, 708 (7th Cir. 2003); see also *Rivera,* 469 F.3d at 634-35. Taxing costs against the non-prevailing party requires two inquiries: (1) whether the cost is recoverable; and (2) whether the amount assessed is reasonable. See *Majeske v. City of Chicago,* 218 F.3d 816, 824 (7th Cir. 2000). The list of recoverable costs pursuant to 28 U.S.C. § 1920 includes (1) fees of the clerk and marshal, (2) fees for transcripts, (3) witness fees and expenses, (4) fees for copies of papers necessarily obtained for use in the case, (5) docket fees, and (6) compensation for court-appointed experts and interpreters. See *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.,* 481 F.3d 442, 447 (7th Cir. 2007).

Having reviewed the bills of costs in detail, the Court concludes that, but for Rule 68, the fair result in this case would be to deny costs to both sides for three reasons. First, Plaintiff rejected an offer of judgment that was substantially more than what Plaintiff and his counsel will end up with at the end of this case. Second, both sides included items which may be recoverable but are unreasonable or, more frustrating, unsupported. And finally, this case was very clearly a mixed result case and thus would be an appropriate occasion to deny each side's bill of costs filed pursuant to § 1920. See generally *Gavoni v. Dobbs House, Inc.,* 164 F.3d 1071, 1075 (7th Cir. 1999) (discussing a court's discretion to deny costs in a mixed-result case); *Wells v. City of Chicago*, ---F. Supp. 2d ---, 2013 WL 622942, at *14 (N.D. Ill. Feb. 20, 2013). However, Rule 68 instructs that "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." As previously set forth, Defendants served Plaintiff with a Rule 68 offer of judgment, which offered Plaintiff $40,001.00 plus reasonable attorneys' fees and costs accrued to date, and

Plaintiff declined the offer. Because Plaintiff fared worse at trial, under the language of Rule 68, Plaintiff must pay Defendants' post-offer costs, to the extent that Defendants have appropriately supported their requests for costs. However, due to the mixed-result nature of the verdict and the fact that the Rule 68 offer of judgment cuts heavily against awarding any costs to Plaintiff, the Court will not tax any of Plaintiff's costs to Defendants.

**A.      Deposition Transcripts**

With respect to costs associated with deposition transcripts, Local Rule 54.1(b) requires that "the cost of a transcript or deposition shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at that time." The applicable rates set by the Judicial Conference for 2012 for an ordinary transcript is $3.65 per page. As a result, the per page charge for the deposition transcript of Meribeth Lally ($356.00, 89 pages x $4.00 per page) will be reduced to $324.85. The deposition of Dr. Benditzson ($344.45, 83 pages x $4.15 per page) will be reduced to $302.95. Thus, the Court reduces Defendants' recoverable costs with respect to deposition transcripts by $72.65.

**B.      Photocopying Costs**

In regard to photocopying costs, Defendant can seek reimbursement of photocopy costs only for "copies of papers necessarily obtained for use in the case." §1920(4). Ordinarily, reimbursement can only be received for a copy provided to the court and one copy for opposing counsel. The cost of additional copies made for the convenience of counsel are not recoverable. *Ochana v. Flores*, 206 F. Supp. 2d 941, 946 (N.D. Ill. 2002). The party seeking reimbursement "[m]ust provide the best breakdown of obtainable from retained records * * * and certainly enough information to allow the court to make a determination that the costs sought are, in fact, authorized by §1920." *Autozone, Inc. v. Strick*, 2010 WL 2365523, at *2 (N.D. Ill. June 9,

2010).  "The court cannot award [the prevailing party's] copying costs without some confidence that the costs are properly recoverable." *Fait v. Hummel*, 2002 WL 31433424, at *5 (N.D. Ill. Oct. 30, 2002).  Defendants have sought reimbursement of $22.93 for copies of Plaintiff's medical records. Other than the medical records, Defendants have provided no information concerning the other documents photocopied or the necessity of the copying.  The remaining copying costs are identified only as "Copies and printing for trial prep."  Without more information, "it is not possible to determine which copies were made for the court and opposing counsel and which were made solely for the purpose of attorney convenience." *Autozone, Inc.,* 2010 WL 2365523, at *3.  The Court denies Defendants reimbursement of all copy costs other than the medical records, thus reducing their requests for copy costs by $312.12.

### C.    Trial Transcripts

Defendants seek a total of $4,612.50 for copies of the official trial transcripts. Defendants ordered the trial transcripts on an "expedited" and "daily copy" basis.  "Costs associated with daily trial transcripts maybe recovered where the trial is lengthy and complex. Costs for daily transcripts generally are not reasonably necessary, and thus may not be recovered, where the case is short and simple." *Rawal v. United Air Lines, Inc*., 2012 WL 581146, at *2 (N.D. Ill. Feb. 22, 2012) (internal quotes and citations omitted).  The court in *Rawal* sustained the objection to the costs related to the trial transcripts finding that "United's decision to obtain daily transcripts was more a matter of convenience than of necessity."  *Id.* at *5.  Similarly, in *Lewis v. City of Chicago*, an employment discrimination case involving an eight day trial, the court denied Defendants' request for reimbursement of the cost of the trial transcript finding that the trial "was straightforward and was neither complex nor relatively long." 2012 WL 6720411, at *7-8 (N.D. Ill. Dec. 21, 2012); see also *Serwatka v. City of Chicago*, 2011 WL 2038725, at *3

(N.D. Ill. May 24, 2011) (denied costs for daily trial transcripts where trial was short, straightforward and simple).

The trial in this case took less than five days and involved straightforward issues related to probable cause and false arrest. While witness credibility was at issue, the disputes did not involve details of testimony requiring reference to trial transcripts. Further, no experts testified at trial. Despite filing a memorandum in support of its bill of costs, Defendants have not presented any reasons as to why daily and expedited transcripts were necessary in this case. For these reasons, the Court concludes that Defendants' costs associated with trial transcripts ordered as expedited and "daily copy" will not be reimbursed. However, Defendants may recover the cost of trial transcripts at the regular rate of $3.65 per page, which entitles them to recover $3,219.30 in additional costs.

###    D.    Summary of Defendants' Bill of Costs

The remainder of Defendants' bill of costs was not challenged by Plaintiff and also has held up to the Court's independent scrutiny. Applying the deductions set forth above, the Court awards Defendants costs in the amount of $4,555.53. As previously set forth, Plaintiff is not entitled to recover his costs. One final note: the determination to deny Plaintiff's bill of costs has no bearing on Plaintiff's right to recover under 42 U.S.C. § 1988 the expenses that the Court has awarded in this decision with the reduction previously described. Those expenses were all described and requested in Plaintiff's fee petition and its accompanying materials—a separate filing from Plaintiff's bill of costs. Defendants objected to some of them in their response to the fee petition, largely on grounds of lack of support, unreasonableness, or excessiveness, or on the ground that they related to the claims on which Plaintiff did not prevail. The Court adjudicated those objections earlier in this decision.

## V. Conclusion

For these reasons, the Court denies Defendants' motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), and in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59 [126]; grants in part and denies in part Plaintiff's motion for attorneys' fees [138]; denies Plaintiff's bill of costs [121]; and grants in part and denies in part Defendants' bill of costs [134]. The Court awards Plaintiff $25,000.01, Plaintiff's attorney $26,752.50, and Defendants $4,555.53.

Dated:  May 13, 2013

_____
Robert M. Dow, Jr.
United States District Judge